AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

<table>
<tr><td>United States of America<br>v.<br><br>Angelo Perez<br><br><br><br><br><br><em>Defendant(s)</em></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 26-MJ-70293 LJC</td></tr>
</table>

**FILED**

Mar 20 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ___January 20, 2026___ in the county of ___San Francisco___ in the
___Northern___ District of ___California___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Count 1: Distribution of Methamphetamine.<br><br>Penalties:<br>• Imprisonment: 20 years (21 U.S.C. § 841(b)(1)(C))<br>• Fine: $1 million (21 U.S.C. § 841(b)(1)(C))<br>• Supervised Release: Min. 3 years – Max. life (21 U.S.C. § 841(b)(1)(C))<br>• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))<br>• Forfeiture: 21 U.S.C. § 853(a) \| Deportation \| Denial of Federal Benefits |

This criminal complaint is based on these facts:

See attached affidavit of DEA Task Force Officer Jeffrey Ospital

☑ Continued on the attached sheet.

Approved as to form *Kristina Green*
AUSA Kristina Green

/s/ Jeffrey Ospital
*Complainant's signature*

Jeffrey Ospital, DEA Task Force Officer
*Printed name and title*

Sworn to before me by telephone.

Date:  ___03/19/2025___

*Judge's signature*

City and state:   ___San Francisco, CA___

Honorable Lisa J. Cisneros
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
## ARREST WARRANT AND CRIMINAL COMPLAINT

I, Jeffrey T. Ospital, a police officer with the San Francisco Police Department, serving as a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of a Criminal Complaint and Arrest Warrant charging **Angelo Perez,** (hereafter "PEREZ"), with distribution of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), on or about January 20, 2026, in San Francisco, California, in the Northern District of California.

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

1

//

**AFFIANT BACKGROUND**

4.      I am a Police Officer with the San Francisco Police Department ("SFPD") and have been a sworn peace officer in the State of California since June of 2016.  I have been assigned as an officer / investigator at the SFPD Narcotics Unit since March 2023, and prior to that was a patrol officer assigned to Central Police Station.  I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA").  I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5.       In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations.  During my career, I have received continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations. I have attended training covering various aspects of narcotics investigation including but not limited to drug identification, informant management, undercover operations, search warrant preparation, drug manufacturing, drug overdose homicides, and narcotics and human trafficking investigations.

6.      During my employment at SFPD, I have participated in over a hundred controlled substance sale investigations.  I have discussed the methods and practices used by drug traffickers with other law enforcement officers.  I have also had conversations with drug users and sellers over the course of my career which have provided me further insight to the world of narcotics trafficking and use.  I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of

2

suspects and seizure of controlled substances.  I have reviewed numerous reports related to drug investigations and arrests.  I have also prepared search warrants to seize weapons and narcotics.

7.      Based on my training and experience, as well as conversations I have had with drug dealers, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers.  Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8.      I have also had discussions with other law enforcement officers and in addition to training about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers.  I have examined documentation of various methods in which fentanyl and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.  I am familiar with the appearance of marijuana, heroin, cocaine, cocaine base, methamphetamine, fentanyl, and other controlled substances and regularly handle and inspect controlled substances in the course of my duties.

9.      I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued.  Nor do I request that this Court rely on any facts not set forth herein in reviewing this application. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## APPLICABLE STATUTE

10.      **Distribution of Controlled Substance.** Under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly distribute a federally

3

controlled substance. Under 21 C.F.R. § 1308.12, methamphetamine is a Schedule II controlled substance.

### STATEMENT OF PROBABLE CAUSE

11.     On January 20, 2026, PEREZ was arrested by San Francisco Police Department (SFPD) officers in the area of Taylor Street & Eddy Street in San Francisco, California, in the Northern District of California. Based on the facts described below, there is probable cause to believe that PEREZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his distribution of a mixture or substance containing a detectable amount of methamphetamine to an undercover SFPD officer.

12.     At approximately 06:43 AM on January 20, 2026, SFPD law enforcement personnel, conducted a buy/bust operation in the Tenderloin District of San Francisco. A "buy/bust" operation is a law-enforcement technique where an undercover police officer purchases narcotics from a drug dealer in exchange for U.S. currency. Once the exchange is made, law enforcement officers then arrest the dealer of the narcotics. The area of the Tenderloin in which the "buy/bust" operation occurred is well known to officers as an area where narcotics are illegally bought, sold, and consumed, particularly during the night hours. This drug activity results in multiple calls from citizens about drug dealing and the consumption of illegal drugs in the area.

13.     An SFPD officer acting in an undercover capacity ("UC") walked southbound on the western sidewalk of Taylor Street towards Eddy Street. Prior to reaching the intersection of Eddy Street, the UC approached an individual, later identified as PEREZ, who was seated on what appeared to be an office chair and asked if he had any "crystal, a street term for methamphetamine." PEREZ was wearing a dark T-shirt, blue jacket, and dark pants. PEREZ asked, "how much?" He then opened a camouflage satchel across his chest and began searching through multiple bags that were labeled loose leaf tobacco.

14.     PEREZ provided the UC with a small plastic bindle that contained a usable quantity of (suspected) methamphetamine from the satchel. The UC provided PEREZ one

4

twenty-dollar note of United States Currency (marked City funds) in exchange for the bindle of methamphetamine. The UC then, displayed his pre-determined successful "buy" signal to close cover officers. The officers described PEREZ as a Hispanic male wearing a blue beanie, blue windbreaker jacket, and sitting in an office chair. Moments later, operational team members located and arrested PEREZ. The close cover officers confirmed PEREZ was the correct individual to be arrested.

15.    A law enforcement officer conducted a search of PEREZ and his personal belongings incident to arrest and located and seized the following items: $42.00 of United States Currency (various denominations) located in his wallet in his jacket pocket, (1) inoperable red digital scale located in the camouflage satchel, (1) operable digital scale with white powdery residue located in the camouflage satchel, and the twenty-dollar note of marked City funds provided by the UC (in addition to the $42.00).

16.    The suspected methamphetamine weighed approximately 1.7 grams gross and tested presumptive positive for methamphetamine when tested with a TruNarc testing device.

17.    The methamphetamine, digital scales, & United States Currency were retained as evidence and booked accordingly.

18.    Because PEREZ possessed a usable quantity of (suspected) methamphetamine that was sold to an undercover police officer, US currency in various denominations, two digital scales, and was located/arrested in a high crime area known for narcotics sales, I believe that PEREZ distributed methamphetamine.

19.    PEREZ was found with $42.00 of U.S. currency, in various denominations. Based on my training and experience, I know that most street level drug deals are done with small denominations as small denominations are easier to handle, do not draw attention because it is quick and allows the dealers to make change. Typically, narcotics users purchasing drugs do not have or carry large amounts of cash.

20.     Based on my training and experience, I know that users of controlled substances typically purchase smaller quantities of controlled substances. As such, I believe that PEREZ obtained the monies he possessed through his illicit narcotics/controlled substance sales efforts.

21.     On March 12, 2026, I obtained confirmatory testing results for the controlled substances seized in this case. The lab testing confirmed that the seized drugs contained methamphetamine and had a net weight of 0.324 grams

22.     PEREZ verbally identified himself as Angelo PEREZ when he was detained. Law enforcement officers then conducted a warrants check, which provided a name, address, and California Driver's License number for PEREZ.  PEREZ'S identity was confirmed by officers by matching his appearance to his California Driver's License photo.

### CONCLUSION

23.     Based on the information set forth in this Affidavit, there is probable cause to believe that on or about January 20, 2026, in the Northern District of California, PEREZ committed a violation of federal law in that he distributed a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  Accordingly, I respectfully request that the Court issue a criminal complaint and arrest warrant for Angelo PEREZ.

____/s/_____
Jeffrey T. Ospital
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 19th day of March, 2026.

_____
HONORABLE LISA J. CISNEROS
United States Magistrate Judge

6